United States District Court
Northern District of Ohio Eastern Division

In Re: WELDING FUME PRODUCTS  
LIABILITY LITIGATION

MDL Docket No. 1535

Case No. 1:03-CV-17000

**This Document Relates to**

Judge Kathleen M. O'Malley

Wayne and Laura Beheler v. Lincoln Electric Company et al., Case No. 1:06 cv 17204  
Wilbert and Floyce Carriker v. Lincoln Electric Company et al., Case No. 1:06 cv 17205  
Donald and Sheila Goforth v. Lincoln Electric Company et al., Case No. 1:06 cv 17217  
Randy and Catherine Quinn v. Lincoln Electric Company et al., Case No. 1:06 cv 17218  
Jerry and Sharon Steelman v. Lincoln Electric Company et al., Case No. 1:06 cv 17206

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION AND MEMORANDUM IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY CONCERNING CERTAIN TESTS PERFORMED BY AND OPINIONS OF DR. WILLIAM LONGO**

## I.

## INTRODUCTION

Defendants' Motion to Exclude Dr. Longo's macrophage "solubility" evidence is the most recent chapter in a series of scientific sideshows they have created over the course of this litigation. Having defended their products for decades by cultivating doubt about the health effects of welding fume, Defendants' comfortably shifted to defending lawsuits by cultivating doubt about basic principles of science, using "Daubert" as their excuse. The Court will recall Defendants MDL "tutorial" materials which informed the Court, among other things, that the "form" of manganese in welding fume was unique, insoluble, not bioavailable, and could not cross the blood-brain barrier.[1] Today, a simple review of the scientific facts known to Defendants at the time reveals that Defendants'

---
[1] In particular, the statement of Dr. Ruehl focused on these issues.

MDL tutorial was simply another attempt at "scientific" misdirection. Indeed, undaunted by the clear, unbiased scientific evidence that the manganese in welding fume – like <u>all</u> other known industrial forms of manganese – could find its way to the blood and, ultimately, the brains of exposed workers,[2] Defendants brought Dr. Brian Buckley to defend their lawyer-driven scientific arguments.[3] After hearing from Dr. Buckley, this court excluded <u>his</u> testimony, noting:

> Buckley's experiments and opinions, though interesting to listen to, are too much ado about nothing that is material, so exclusion is appropriate under Fed. R Civ. P. 611(a).
>
> The Court further finds, moreover that Buckley's testimony must also be excluded under Fed. R. Evid. 403. Spending substantial time analyzing and appearing to debate a non-debatable proposition could mislead the jury into believing that plaintiffs proffer a scientific case which they do not, and which is easily rebutted. In other words, <u>Buckley's testimony would have the effect of putting up what is no more than a straw man which, because of the scientific complexity of the testimony, the jury could be confused into believing is important</u>.[4] (emphasis added)

## II.

---

[2] Kim, *Increase in signal intensities on T1-weighted magnetic resonance images in asymptomatic manganese-exposed workers,* Neurotoxicol, Vol. 20, Issue 6, pp.901-907, 1999. Josephs, *Neurological manifestations in Welders with Pallidal MRI T1 hyperintensity*, Neurology, June, 2005. Sadek, *Parkinsonism due to Manganism in a Welder*, Int. J. Toxicol, Vol. 22, Issue 5, pp.pp.393-401, 2003; and Dr. Sze MDL Deposition, dated 3/4/05, page 283, lines 12-18.
      Q.  Based on the medical and scientific literature you have reviewed, it is reasonable to conclude that manganese accumulates in the brain from exposure to welding fume?
      A.  Yes. We can see accumulation of manganese.

[3] The Court will recall the extended exchange with Dr. Buckley about why <u>he</u> did not consider macrophages. Transcript of Proceedings, July 28, 2005, Vol. 13, pp. 2394-2399, attached as Exhibit "A".

[4] Court's Order date 2/27/06. Contrary to the Defendant's suggestion that Dr. Longo's study was excluded because it was unreliable, it was excluded because <u>Buckley's</u> work was excluded as irrelevant and misleading.

Defendants now resurrect their strategy of misdirection by challenging Dr. Longo's *in vitro* studies with human macrophage cells. Interestingly, they don't challenge the entirety of the work set out in Dr. Long's Supplemental Report,[5] merely his opinions that once macrophages engulf fume particles, the manganese is "solubilized" and ultimately "released". See Defendants Motion. Indeed, Dr. Buckley (who makes a renewed appearance here via affidavit) agrees that the macrophages "engulf" the fume particles.[6] Dr. Buckley also appears to agree that the EDS (Energy Dispursive Spectroscopy) technology used by Dr. Longo to measure manganese percentages in the macrophage studies is an appropriate methodology.[7] Thus, the rub – or so it seems – is how one characterizes the "missing" manganese. Dr. Longo says "more likely than not" it has been "solubilized" and becomes available for transport to the blood. Defendants assert that Dr. Longo's admission that he "can't prove that absolutely, yet, within a reasonable degree of scientific certainty" means his work is "unscientific" and thus inadmissible.

The problem with all of this is that <u>we know</u> that alveolar macrophages engulf welding fumes inhaled by welders[8] and <u>we know</u> that the manganese from welding fume ultimately reaches the blood and the brains of welders.[9] Indeed, Dr. Reuhl, the original sponsor of the "it can't happen" mythology testified under oath that it <u>could</u>.[10] A court once noted with some disdain that so-called "experts" have described in detail the reasons

---

[5] Attached as Exhibit "B"
[6] Buckley Affidavit.
[7] *Id.* Indeed, the industry has repeatedly used the same or similar technology to study welding fume. See AWS, *Characterization of Welding Fume* (1983) and Dickinson & Lippold, October 26, 2004 Report.
[8] This <u>fact</u> has been known for decades. *See* Enzer. J Ind Hyg Toxicol *Chronic lung changes in electric arc welders*,. J Ind Hyg Toxicol Vol. 20, Issue 5, pp. 333-350. 1938, attached as Exhibit "C."
[9] See references cited in footnote 2, *supra*.
[10] Transcript of Proceedings,July 28, 2005, Vol. 13, pp. 2396-2397, attached as Exhibit "D".. Not surprisingly, this is precisely the same mechanism described in classic literature on manganism. *See* Rodier, *Manganese Poisoning in Moroccan Mines,* Brit. J. Industr. Med, 1955, 12, 21.

why bumblebees can't fly – yet we know they can.[11] Here, we are faced with exactly the opposite problem; Defendants ask this Court to exclude testimony that bumblebees <u>can fly</u> because we don't know with certainty how or why they do.

*Daubert*, of course, was never intended to exclude expert testimony that could assist the jury to understand basic scientific principles relevant to a case. Dr. Longo's work – his photographs, his measurements, his conclusions – do precisely that. His "admission" that he doesn't now for sure, does not render this work inadmissible. As this Court noted previously when ruling on Defendant's challenges to testimony regarding basic toxicology:

> With regard to Dr. Roth's concession that "some of the [manganese] transport mechanisms" he discusses are not fully understood, "[t]he fact that the mechanism remains unclear does not call the reliability of the opinion into question: 'Not knowing the mechanism whereby a particular agent causes a particular effect is not always fatal to a plaintiff's claim. Causation can be proved even when we don't know precisely how the damage occurred, if there is sufficiently compelling proof that the agent must have caused the damage somehow." *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.,* 289 F.Supp.2d 1230, 1247 (W.D.Wash. 2003) (quoting *Daubert v. Merrell Dow Pharms, Inc.,* 43 F.3d 1311, 1314 (9th Cir. 1995) ("*Daubert II*")).[12]

### III

Dr. Longo's basic work on macrophages – the photographs and the EDS measurements in particular – is solidly based in scientific method and upon the

---

[11] *See Remington Arms Co. v. Wilkins*, 387 F.2d 48, 54 (5th Cir. 1968) ("It is said that according to the laws of science it should be impossible for a bumblebee to fly, but it flies nevertheless.") Indeed, Defense counsel pointed out during his cross examination of Dr. Louis that since "we all know they do" an argument to the effect that they can't or don't fly would be a "figment of imagination." PD Transcript, p. 98. Defendants "solubility" defense is such a "figment of imagination."

[12] Judge O'Mally Order dated 8/8/05, *In re: Welding Fume Products Liability Litigation,* Case No. 1:03-CV-1700; *see also Daubert*, 509 U.S. at 590 ("Of course, it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, there are no certainties in science.")

4

unassailable fact that <u>we know</u> what he depicts and measures <u>happens</u>.  His macrophage slides are important demonstrative evidence that will assist the jury in understanding the human body's initial response to inhaled welding fume particles.  Thus, there is absolutely no basis for the exclusion of his slides.[13]  His conclusions that "more likely than not" the "missing" manganese has been solubilized is also based upon good science and "should be admitted to assist the jury.  This court therefore should deny Defendants' motion.

Moreover, this Court has the opportunity here to stop this sideshow once and for all. For years Plaintiffs have been compelled to produce evidence to rebut Defendant's "evidence" that welding fume "can't cross the blood-brain barrier" – yet we all <u>know</u> that it can.  This Court should take this opportunity to prohibit Defendants from offering <u>any</u> evidence suggesting that it can't.

Date:  October 4, 2006

Respectfully submitted,

/s/ *Jeffrey S. Thompson*

_____
Jeffrey S. Thompson, Esq.
Elizabeth C. Ward, Esq.
Motley Rice LLC
28 Bridgeside Boulevard
Mt. Pleasant, SC 29465
Phone (843) 216-9000
Facsimile (843) 216-6450
jthompson@motleyrice.com
lward@motleyrice.com

---

[13]  Plaintiffs sought to resolve this Motion by offering to stipulate that they would not elicit testimony from Dr. Longo that macrophages "solubilize" and "release" manganese.  Rather, Plaintiffs would simply use the SEM photographs of macrophages "engulfing" fume particles and go no further relying solely upon Dr. Longo's work.  Defendants refused the offer, arguing that all of his macrophage materials should be excluded.

**Certificate of Service**

I hereby certify that on October 4, 2006 a true copy of the foregoing was filed electronically. Notice of this filing was sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM / ECF system.

Respectfully submitted,

 */s/ Lisa Ann Gorshe*
John R. Climaco (OH #0011456)
E-Mail: jrclim@climacolaw.com
Lisa Ann Gorshe (MN#029522X)
E-mail: lagors@climacolaw.com
CLIMACO, LEFKOWITZ, PECA,
WILCOX & GAROFOLI CO., LPA
1220 Huron Road, Suite 1000
Cleveland, Ohio 44115
Tel. (216) 621-8484
Fax: (216) 771-1632

**Liaison Counsel for Welding Fume Plaintiffs**